**ORIGINAL**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION



**FILED**

JUN 3 0 2005

CLERK'S OFFICE
U.S. DISTRICT COURT
ANN ARBOR, MI

SHIRLEY WILLIAMS,

        Plaintiff,

vs.

JO ANNE B. BARNHART,
Commissioner of
Social Security,

        Defendant.

_____/

CASE NO. 04-72760

HONORABLE LAWRENCE P. ZATKOFF
HONORABLE STEVEN D. PEPE

## REPORT AND RECOMMENDATION

Plaintiff Shirley J. Williams brought this action under 42 U.S.C. § 405(g) and §

1383(c)(3) to challenge a final decision of the Commissioner of Social Security denying her

application for Supplemental Security Income benefits and Disability Insurance Benefits under

Titles II and XVI of the Social Security Act. Both parties have filed motions for summary

judgment which have been referred for report and recommendation pursuant to 28 U.S.C. §

636(b)(1)(B). IT IS RECOMMENDED that Defendant's motion be DENIED and Plaintiff's motion be

GRANTED.

I.    BACKGROUND

    A.    Procedural History

Plaintiff applied for disability insurance benefits and supplemental security income on

October 23, 2001, alleging disability since August 30, 2001, due to asthma, chronic bronchitis,

obesity and hypertension (R. 33-35, 229-31). The Agency denied Plaintiff's claim initially (R.

1

16). Plaintiff requested an administrative hearing, at which plaintiff testified and attorney

Clifford B. Walkon represented her (R. 29-30). Vocational Expert ("VE") John Stokes also

testified (R. 16). Following the hearing Administrative Law Judge ("ALJ") Joseph E. Brezina

issued a decision on March 18, 2004, finding Plaintiff not disabled because she could either

return to her past relevant work or perform jobs existing in significant numbers in the national

economy (R. 21-22). The Appeals Council denied review on June 12, 2004 (R. 6-9).

     B.    Background Facts

Plaintiff, born September 6, 1945, was fifty-eight years old at the time of the ALJ's

decision, making her a "person of advanced age" under 20 C.F.R. § § 404.1563 (R. 315). She

possesses a high-school education (R. 316). Plaintiff previously performed light skilled work as

a surgical technician from 1966 to September 11, 2001 (R. 43).

     1.    *Plaintiff's Hearing Testimony*

Plaintiff stopped working in August 2001 because she had difficulty breathing through

the surgical mask due to her asthma and bronchitis (R. 317). She has hypertension, and her high

blood pressure frequently causes prolonged dizziness (R. 320-21). She complains of lower back

pain, which causes her left leg to go numb after she sits for a while (R. 321). If she lies down on

her left side, she experiences a burning sensation (R. 320-21). Plaintiff also experiences chest

pain about once per month or every other month (R. 322). She takes medication for her blood

pressure (R. 320). She takes steroids orally, which she says caused her to increase in weight

from 185 to 221 lbs (R. 323). Every six hours she uses a machine to administer breathing

treatments, and she also uses two inhalers (R. 319-20).

2

When asked how her impairments prevented her from working, she responded that she had difficulty breathing through the surgical mask, particularly when around hospital chemicals (R. 317). She has difficulty breathing when exposed to any strong odors or perfumes (R. 318). Plaintiff also experiences shortness of breath when walking, sitting, or talking at length (R. 318). As a surgical technician she usually stood for about seven hours in an eight-hour shift, but now can only stand for forty-five minutes to an hour. (R. 316, 324).

When asked about her ability to do certain job-related activities, Plaintiff stated that she can sit for half an hour before her legs become numb and she must get up or change positions (R. 324). She can stand for 45 minutes to an hour before she becomes tired and short of breath and starts experiencing lower back pain. She can walk for about half a block without breathing difficulty. She can lift 10-15 lbs, but has difficulty climbing stairs (R. 324-25).

### 2. *Medical Evidence*

On June 15, 1998, Plaintiff was evaluated for complaints of chest pain (R. 77). Her myocardial thallium stress tomography was within normal limits, and her lung/heart ratio was normal but at the margin of abnormality. During a March 3, 2001, emergency room admission for complaints of right hip pain, doctors found mild disease of Plaintiff's coronary arteries, but no evidence of deep venous thrombosis, angina, or myocardial ischemia.(R. 65, 112, 140, 194-5). X-rays of her chest revealed no abnormalities (R. 142). Doctors discharged her with no specific restrictions (R. 64). Further chest X-rays on August 24, 2001, showed no acute cardiopulmonary process (R. 190).

Plaintiff entered the hospital on August 28, 2001, reporting shortness of breath, cough and wheezing (R. 86). Hospital records noted her past medical history of recurrent bronchitis,

3

shortness of breath, wheezing, hypertension, and other heart problems. She has a family history of hypertension. She had been smoking a pack of cigarettes a day for thirty years at the time of admittance. Plaintiff had rhonchi in both lung fields, but no wheezing or evidence of consolidation (R. 87). She underwent a bronchoscopy and was diagnosed with mild bronchitis and mild focal pulmonary interstitial fibrosis in the right lung, and mild to moderate bronchitis in the left lung (R. 87). She was discharged on August 30, 2001, with no restrictions. Plaintiff received prescriptions for medication to treat chronic bronchitis on September 24, 2001, including a prescription for a Pulmo Aide nebulizer (R. 151).

Plaintiff's attending physician, Arsenio V. de Leon[1], M.D., completed a Residual Functional Capacities ("RFC") assessment on October 24, 2001, with a diagnosis of chronic bronchitis (R. 155). Dr. de Leon reported that Plaintiff could sit and drive frequently (1/3 to 2/3 of the time), stand and walk occasionally (up to 1/3 of the time) and could lift less than 10 pounds frequently and 10 to 20 pounds occasionally (R. 155). Dr. de Leon attached pulmonary testing with a FVC of 2.30 (85% of predicted value), FEV 1 of 1.89 (86% of predicted value), FEV 1 / FVC ratio of 82% and FEF 25-75% 2.00, "all within normal limits but curvature to the flow volume loop suggesting minimal small airway disease" (R. 157). There were signs of incomplete exhalation. Dr. de Leon found airway obstruction and a diffusion defect suggesting emphysema, but the absence of overinflation was inconsistent with that diagnosis (R. 157).

A state agency physician reviewed the medical evidence on December 21, 2001, and concluded that Plaintiff could sit, stand, and walk for six hours out of an eight-hour day (R. 161).

---

[1]The name of Plaintiff's pulmonologist appears throughout the record with a variety of spelling and capitalization choices. The spelling form chosen is based on instances in the record where the Dr. de Leon signed or printed his name.

4

She could lift up to 50 pounds occasionally, and up to 25 pounds frequently. She was found capable of performing medium work which avoided even moderate exposure to fumes, odors, dust, gases and poor ventilation (R. 164). The physician based his opinion on Plaintiff's normal coronary test, the near-normal pulmonary test results and mild bronchitis biopsy diagnoses (R. 161).

Plaintiff entered the hospital again on April 13, 2002, complaining of a severe headache of one day's duration and dizziness (R. 183). She had a clear lungs and a regular heart (R. 184). A CT scan of her brain showed no acute process and her chest x-ray was negative. The diagnosis was hypertension, a history of migraine headaches and a history of coronary artery disease. Other than noting shortness of breath on exertion, pulmonary emboli in 1982, and asthma since 2001 there was no more extensive mention of her pulmonary problems.

Plaintiff was admitted to the emergency room for shortness of breath and dizziness on November 12, 2002 (R. 205-06). She was diagnosed with bronchitis and apparently uncontrolled hypertension. She was discharged in stable condition.

On January 30, 2003, Plaintiff was admitted to the hospital with chest pain and shortness of breath (R. 282). She was diagnosed with chest pain compatible with angina pectoris, reactive airway disease and probable pulmonary fibrosis. Plaintiff underwent a CT scan that was negative for pulmonary embolus. Her severe coughing appeared to have lessened with aggressive respiratory therapy including a nebulizer and antitussive medications. She was discharged on February 2, 2003, in improved condition with her cough significantly resolved.

Dr. de Leon completed a medical questionnaire at the request of Plaintiff's attorney (R. 169-72). He listed Plaintiff's symptoms as shortness of breath, cough, dizziness, and chest pain.

5

(R. 169). He determined that she was unable to tolerate extreme temperatures, humid conditions or exposure to fumes, dust and pollutants. Dr. de Leon opined that Plaintiff could not perform a full time job due to her shortness of breath and persistent cough (R. 170). At the time of her hearing, Plaintiff was taking fifteen separate prescription medications, the majority for her breathing impairments (R. 278-79).

3.    *Vocational Evidence*

VE John Stokes classified Plaintiff's past work as light and skilled (R. 327). The skills Plaintiff acquired could transfer to work as a dental assistant. One thousand of these jobs exist in southeast Michigan. Dental assistants would not be exposed to environmental pollutants or fumes (R. 328). When asked by the ALJ to credit Plaintiff's testimony about the severity and extent of her medical problems the VE responded that Plaintiff could not perform any of her past work because of her inability to stand for more than an hour or to lift more than 10 to 15 pounds. The ALJ posed a hypothetical question involving a person of Plaintiff's age, education, and past work experience, who could lift and carry 25 pounds frequently and 35 pounds occasionally, push and pull with upper and lower extremities, perform activities requiring bilateral manual dexterity for both gross and fine manipulation with reaching and handling, occasionally climb, balance, stoop, kneel, crouch or crawl, and sit or stand for up to 6 hours in an 8-hour workday, who avoided ascending and descending stairs frequently, unprotected heights, moving machinery and vibrations, and who was restricted to work in a relatively clean work environment with low levels of pollutants and stable temperatures. The VE responded that such a person could perform Plaintiff's past work as a surgical technician and that there were 800 such jobs in southeast Michigan (R. 329-330). The hypothetical person could also work as a dental assistant (1,000

6

jobs), a cashier (28,000 jobs), food preparation worker (7,300 jobs), and apparel sales clerk (3,100 jobs) (R. 330). If the hypothetical person were limited to lifting and carrying up to 20 pounds frequently and 30 pounds occasionally, that person could still perform all the jobs identified (R. 330-331).

### 4.    *ALJ Findings and Decision*

ALJ Brezina found that the claimant had severe impairments involving obesity, chronic bronchitis and hypertension (R. 21). The record did not document findings meeting or equaling any of the listings in Appendix 1, Subpart P, Regulations No. 4. Plaintiff's testimony regarding her limitations was not totally credible. Plaintiff had the RFC to lift and carry 25 pounds frequently and 35 pounds occasionally, push and pull with upper and lower extremities, perform activities requiring bilateral manual dexterity for both gross and fine manipulation with reaching and handling, occasionally climb, balance, stoop, kneel, crouch or crawl, and sit or stand for up to 6 hours in an 8-hour workday (R. 21-22). In addition, he found that she should not ascend and descend stairs frequently, work around unprotected heights, with moving machinery or in jobs involving vibrations, and that she must work in a relatively clean work environment with low levels of pollutants and stable temperatures. As a result, ALJ Brezina found that Plaintiff retained the RFC to perform her past work as well as the range of light, skilled work in a relatively clean environment which VE Stokes identified (R. 22).

### II.    ANALYSIS

#### A.    Standard of Review

In adopting federal court review of Social Security administrative decisions, Congress limited the scope of review to a determination of whether the Commissioner's decision

7

is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Sherrill v. Secretary of HHS*, 757
F.2d 803, 804 (6th Cir. 1985). Substantial evidence has been defined as "[m]ore than a mere
scintilla;" it is "such relevant evidence as a reasonable mind might accept as adequate to support
a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison
Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Commissioner's findings are not subject to
reversal merely because substantial evidence exists in the record to support a different
conclusion. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citing *Baker v. Heckler*, 730
F.2d 1147, 1150 (8th Cir. 1984)).

In August 1991, the Social Security Administration adopted a new regulation in response
to the treating physician rules adopted by the various circuits. 20 C.F.R. § 404.1527. While the
regulation indicates that the Commissioner will generally give more weight to the opinions of
treating sources, it sets preconditions for doing so, which are stricter than those established by the
Sixth Circuit. The new regulation also limits the scope of the subject matters on which the
Commissioner will give a treating source opinion greater weight. Indeed, the Commissioner's
use of "treating source" as opposed to "treating physician" appears to be an effort to distinguish
these new regulations from the case law established in the various circuits under the generic term
of the "treating physician rule."

Under the 1991 revisions, the Commissioner will only be bound by a treating source
opinion when it is "well supported by medically acceptable clinical and laboratory diagnostic
techniques and is not inconsistent with other substantial evidence in [the] case record." 20 C.F.R.
§ 404.1527(d). In those situations where the Commissioner does not give the treating source
opinion "controlling weight," the regulations set out five criteria for evaluating that medical

8

opinion in conjunction with the other medical evidence of record.[2] The regulation also limits the

subjects upon which the Commissioner must defer to a treating source opinion on "the issue[s] of

the nature and severity of your impairment[s]." 20 C.F.R. § 1527(d)(2).

Under 20 C.F.R. § 404.1527(e), the Commissioner will not defer to treating source

opinions on certain subjects that are "reserved to the Secretary." These include:

1. An opinion that claimant is disabled under the "statutory definition of
disability."

2. An opinion on the nature and severity of the impairment if that opinion does
not meet the "well supported" standard of § 1527(d) set out above.

3. An opinion that the claimant meets the Listing of Impairments.

4. An opinion on the effects of an impairment on the claimant's residual
functional or vocational capacity.

Thus, while deferring in part to the court-created "treating physician rule," the

Commissioner's 1991 regulation in large measure rejects circuit case law that gives enhanced

weight to treating physician opinions regarding disability under the Listing or on residual

functional capacity.

---

[2] Those five criteria are:

(1) the length, frequency, nature and extent of the treatment relationship, including
the kind and extent of examination and testing sought from specialists or independent
laboratories;

(2) the supportability of the medical opinion based on medical signs and laboratory
findings, with better explanations being given more weight, and whether the opinion
includes all of the pertinent evidence as well as opinions of treating and other
examining sources;

(3) the consistency of the opinion with the record as a whole;

(4) specialty, with greater weight given to relevant specialists;

(5) and other factors which tend to support or contradict the opinion.

While 20 C.F.R. § 404.1527(a) defines medical opinions to include statements from physicians as to what an individual "can still do despite impairment(s), and [a claimant's] physical or mental restrictions," these factors are different than the issues reserved to the Commissioner, including the individual's residual functional capacity and whether the person can perform other work in the economy and is thus not disabled. *See* SSR 96-5p and 20 C.F.R.§§ 404.1527(e) and 429.927(e).

SSR 96-5p notes this difference with regard to residual functional capacity determinations which include the individual's ability to perform work-related activities based on *both* medical and non-medical evidence. It points out that the ALJ often has substantial additional evidence available in making this determination than does a treating source. While the ALJ must consider the opinion of claimant's treating source as to what the claimant can still do, the judgment as to whether claimant has the residual functional capacity for other work involves considerations beyond that medical judgment as to what the individual can still do and is a determination to be made by the ALJ. Furthermore, the ALJ in making that determination is only bound by the treating source's opinion on what the individual can do when that opinion meets the standards set out in 20 C.F.R. § 404.1527(d)(2). As noted above, that regulation and SSR 96-2p give controlling weight to a treating source opinion only when that opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent" with other substantial evidence in the record.

The Commissioner requires that the decisions of Administrative Law Judges "must contain specific reasons for the [credibility findings], supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent

10

reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p.

B.    Factual Analysis

Plaintiff's new counsel bringing this case argues that: (1) the ALJ erred in determining Plaintiff's RFC in disregard of the opinion of her pulmonologist, (2) the ALJ erred by finding Plaintiff capable of returning to her past relevant work as an operating room technician, (3) the Medical Vocational Guidelines direct a finding of disability at Step 5 of the Sequential Evaluation Process, and (4) the ALJ's discussion of Plaintiff's past smoking habit is both immaterial and inaccurate.

Plaintiff's first three arguments challenge the assessment made by the ALJ with respect to Plaintiff's RFC. Plaintiff contends the ALJ did not give proper weight to the testimony of Plaintiff's treating pulmonologist, Dr. de Leon. Specifically, Plaintiff disputes the ALJ's finding that Plaintiff could stand for up to six hours in an eight-hour day. Dr. de Leon issued three functional capacity assessments at the request of Liberty Mutual Insurance, and one at the request of Plaintiff's hearing counsel. The assessments for Liberty Mutual, completed on September 21, 2001, October 24, 2001, and January 2, 2002 respectively differed slightly in non-material restrictions. Each stated that Plaintiff could only sit or stand for up to one-third of an eight-hour workday. The final assessment, completed on February 12, 2003, increased her standing restriction to one hour per eight-hour workday. It stated that Plaintiff would be unable to perform a full-time job eight hours a day.

While this last conclusion may be on a subject reserved to the Commissioner, the sit and stand limitations of Dr. de Leon clearly are "medical opinions" under 20 C.F.R. § 404.1527(a) on

11

what Plaintiff can or cannot do with her impairments. Thus, it must be given due consideration by the ALJ under the five criteria noted above in footnote 2.

The state agency physician issued a RFC on December 21, 2001, that differed markedly from the assessments issued by Dr. de Leon. The physician opined that Plaintiff had mild asthmatic bronchitis and uncontrolled hypertension. The state agency physician indicated that the results from a coronary test on March 4, 2001, a lung biopsy on August 29, 2001, and an additional diagnostic identified as a PFS in September, 2001, were taken into account during the formulation of the RFC. No records from an examining or treating source were referred to(R. 166). The state agency physician indicated that Plaintiff was an individual with the residual functional capacity to perform work lifting 25 pounds frequently and 50 pounds occasionally (from very little up to 1/3 of an eight-hour work day); who could stand/walk (with normal breaks) for a total of six hours in an eight-hour work day; who could sit (with normal breaks) for a total of six hours in an eight-hour work day; who should avoid frequent ascending and descending stairs; who can perform pushing/pulling motions with her upper and lower extremities within the aforementioned weight restrictions; who can perform activities requiring bilateral manual dexterity for both fine and gross manipulation with handling and reaching; who should avoid unprotected heights, moving machinery and vibration; who should avoid even moderate exposure to fumes, odors, pollutants, dust, and gases; and who would only be able to occasionally climb (R. 160-167).

The ALJ examined the record in order to determine Plaintiff's RFC. ALJ Brezina noted that Plaintiff received treatment for bronchitis on January 3, 2000. She also had possible episodes of bronchitis on March 3, 2001 and on August 9, 2001 (R. 63-69, 107-10). The results

12

of a bronchoscopy on August 29, 2001, revealed mild chronic bronchitis and mild focal pulmonary interstitial fibrosis in Plaintiff's right lung, and mild to moderate chronic bronchitis in the left lung (R. 94). ALJ Brezina noted that Plaintiff underwent a coronary catheterization on March 6, 2001, which indicated mild heart disease (R. 18, 129-34). The ALJ also noted that a coronary stress test on June 15, 1998, gave results within normal limits (R. 77).

Plaintiff was treated for unstable angina on March 4, 2001, but released two days later with no restrictions (R. 117). A stress test on March 5, 2001 showed no angina and an average exercise capacity limited by dyspnea and fatigue (R. 140). A follow-up stress test on May 7, 2002, showed an exercise capacity limited by fatigue but no angina or ischemia (R. 223). An August 24, 2001 X-ray yielded normal results and no acute cardiopulmonary process (R. 190). The ALJ found that Plaintiff's hypertension was under good control (R. 18). Plaintiff also complained of headaches and dizziness, but a brain CT scan on April 14, 2002 was normal (R. 184). The ALJ indicated the symptoms were related to Plaintiff's uncontrolled blood pressure, which was gradually brought back under control (R. 19). After reviewing the record, the ALJ agreed with the state agency physician's assessment in most respects, except for reducing the maximum amount of weight lifted to 35 pounds and classifying some additional postural limitations as able to be performed occasionally.

Plaintiff's current counsel argues that the ALJ inaccurately characterized Plaintiff as a continuing smoker, and found her testimony not credible on this basis. When evaluating the credibility of a Plaintiff as to the severity and extent of subjective symptoms, an ALJ may consider factors such as daily activities and precipitating or aggravating factors. 20 C.F.R. § 404.1529(c)(3). Yet, those facts must be supported by the record.

13

The record here shows that Plaintiff smoked a pack of cigarettes a day for thirty years (R. 86, 183). She cut her smoking down to half a pack a day in April of 2001 (R. 183). She reported to physicians that she quit smoking altogether in August of 2001 (R. 284, 289, 293). At the hearing, Plaintiff testified she quit smoking in the "latter half of last year," which at the time of the hearing would have been the latter half of 2002. Yet the ALJ states that "although the (sic) she has been advised to stop smoking on numerous occasions by her treating physician, [Plaintiff] continues to smoke on a regular basis," (R. 18). Later the ALJ states: "Further, as the claimant continues to smoke and to pollute her own environment. Hence, due to the claimant's own life style choice, a clean work environment should not really be a restriction," (R. 19).

It is understandable that the ALJ would consider smoking an important factor in determining the severity of Plaintiff's complaints. Indeed, it is apparent her past smoking has contributed greatly to her severe pulmonary impairment. While Congress has specifically limited Social Security disability claims based on abuse of other self-administered substances such as drugs and alcohol, tobacco abuse does not represent automatic grounds for denial of benefits even if it is a contributing factor to the determination of disability. *Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984).

Here ALJ Brezina weighed Plaintiff's smoking history heavily in determining her testimony not credible regarding the severity or extent of her subjective complaints (R. 18). He begins his evaluation asserting "claimant continues to smoke on a regular basis" (R.. 17), and repeats that assertion and other references to her smoking in his opinion (R..18 & 19). While the opinion seems to be driven by this concern about Plaintiff's smoking, the ALJ does not further

14

elaborate why he believed Plaintiff was still smoking and points to no evidence in the record to counter her repeated statements that she has quit.

> SSR 96-7p notes:
>
> When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements. The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible,". . . The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

In evaluating complaints about the severity and extent of a plaintiff's symptoms, an ALJ may properly consider the credibility of the claimant. See *Kirk v. Secretary of Health and Human Servs.*, 667 F.2d 524, 538 (6th Cir.1981), cert. denied, 461 U.S. 957, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983). The ALJ's findings concerning an applicant's credibility are to be accorded great weight and deference, particularly because an ALJ has the duty of observing a witness's demeanor and credibility. See *Villarreal v. Secretary of Health and Human Servs.*, 818 F.2d 461, 463 (6th Cir.1987). Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence. See *Beavers v. Secretary of Health, Educ. and Welfare*, 577 F.2d 383, 386-87 (6th Cir.1978). As noted above, substantial evidence must be relevant evidence that is more than a mere scintilla. See also *Cline v. Sullivan*, 939 F.2d 560, 567-69 (8th Cir. 1991) (ALJ must expressly determine why subjective complaints are not credible and set forth inconsistencies in the record); *Folks v. Sec'y of Health and Human Servs.*, 825 F.2d 1259,

1261 (8th Cir. 1987); *Rainey v. Bowen*, 814 F.2d 1279, 1281 (8th Cir. 1987). Further, although

an adjudicator may find the claimant's allegations of severity to be not credible, the adjudicator

must specifically make findings which support this conclusion. *Bunnell v. Sullivan*, 947 F.2d

341, 345 (9th Cir. 1991) *(en banc)*. *Polaski v. Heckler*, 739 F.2d 1320, 1321-22 (8th Cir.

1984). The ALJ must say more than that the testimony about subjective complaints is not

credible.

    In this case, the ALJ has not cited evidence in the record to support his assertion that

Plaintiff is a continuing smoker, and has not articulated any additional reasons why he believes

Plaintiff still smokes. Upon reviewing the record, there is no evidence that Plaintiff continued to

smoke after the latter part of 2002 (R. 326). To the contrary, Plaintiff was admitted to the

hospital on November 12, 2002, with breathing difficulties eleven months before her hearing (R.

205). The record of her visit indicates two places that she was not a smoker (R. 206, 209). Her

medical record, which on previous visits had documented her smoking habit, omitted any

mention of smoking on this admission (R. 205-220). This correlates with Plaintiff's testimony at

the hearing that she stopped smoking sometime in the latter part of 2002 (R. 326). No further

evidence exists in the record to suggest that Plaintiff continued or restarted smoking. There is

not sufficient evidence in the record to conclude Plaintiff continued to smoke at the time of the

hearing or the ALJ's decision. Because this finding was so prominent in the ALJ's credibility

determination regarding Plaintiff's other testimony concerning her limitations, this central factual

error of the ALJ undermines his overall credibility assessment of Plaintiff.

    Plaintiff also argues that the ALJ should have given greater weight to Dr. de Leon's

reports than to the state agency physician's assessment under 20 C.F.R. § 404.1527(d)(2) because

16

Dr. de Leon is Plaintiff's treating physician. The ALJ declined to give Dr. de Leon's assessments controlling weight because he considered them out of proportion with the remaining objective medical evidence (R. 19). As noted above, controlling weight is given to a treating physician's opinion only when that opinion is well-supported by the medical record and is not inconsistent with the other substantial evidence. *See* 20. C.F.R. § 1527(d)(2) ("If we find that a treating source's opinion... is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight"). The ALJ explained that Dr. de Leon's February 12, 2003, assessment that Plaintiff could only stand one hour in eight  was given shortly after a three-day hospitalization and therefore did not reflect Plaintiff's current condition.  This would justify discounting that one-hour limitation on standing.

Yet, ALJ Brezina does not offer any reasons or evidence for disregarding Dr. de Leon's three previous assessments of September 21, 2001, October 24, 2001, and January 2, 2002, that Plaintiff could only sit or stand for up to one-third of an eight-hour workday, other than to assert that they were out of proportion with the remaining medical evidence.  It is unclear to which part of the record the ALJ is referring. This blanket assertion is much like discounting a claimed limitation because of lack of objective or clinical diagnostic evidence, and the Commissioner and courts have consistently required more than this.  Although the Commissioner's 1991 regulation does not require that enhanced weight be given to treating physician opinions on residual functional capacity, the court in *Wilson v. Commissioner of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004) ruled that the ALJ must give "good reasons," as required by 20 C.F.R. § 404.1527(d)(2), when rejecting the testimony of a plaintiff's treating physician.  A court cannot excuse the denial

17

of this mandatory procedural protection even if evidence may exist to support the ALJ's

assertion. *Wilson*, 378 F.3d 541 at 546. Under *Wilson*, the ALJ's "good reasons" must 1) clarify

whether or not the treating physician's opinion was well-supported by the evidence, 2) identify

the evidence supporting such a finding, and 3) explain the application of the factors listed in 20

C.F.R. § 404.1527(d)(2) to determine the weight of the treating physician's opinion. *Wilson*, 378

F.3d 541 at 546. Several of the five criteria in 20 C.F.R. § 404.1527(d)(2) support the opinion of

Dr. de Leon far more than the conclusory opinion of the state agency, non-examining physician

which even the ALJ rejected in part. Dr. de Leon has a lengthy treatment relation with Plaintiff,

he is a pulmonary specialist, and his opinion on Plaintiff's standing and sitting limits in an eight

hour work day is consistent with the other evidence in the record and with Plaintiff having to

give up her surgical technician job. Here there are no adequate reasons to reject the treating

physician's medical opinion on what Plaintiff can and cannot do with her pulmonary impairment.

Again, one can only speculate whether this ALJ determination discounting Dr. de Leon's opinion

on Plaintiff's limitations was colored by his belief that Plaintiff continued smoking, and whether

his discounting of her overall credibility based on the same, thus discounting any medical

opinion that is, in part, based on subjective reports of the patient.

        Without a legally appropriate rejection of Dr. de Leon's opinion in favor of the non-

examining state physician, there is not substantial evidence in the record to uphold the ALJ's

finding that Plaintiff can life 25 pounds frequently and 35 pounds occasionally, stand/walk 6 of 8

hours and additionally sit 6 of 8 hours, and thus perform her past relevant light exertional work.

While there might be substantial evidence to find Plaintiff could perform a limited range of

sedentary work, the ALJ only asked hypothetical questions at the light exertional level. Indeed, if

18

Plaintiff were limited to sedentary jobs, given her age and the VE testimony that her skills only transferred to light jobs such as dental assistant, Medical Vocational Guideline Rule 201.02 would direct a finding of "disabled."

*Faucher v. Sec'y of HHS*, 17 F.3d 171, 176 (6th Cir. 1994), and *Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994), held that after finding reversible error it is appropriate for this Court to remand for an award of benefits only when "all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." This entitlement is established if "the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Faucher* citing *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).

In this case "all essential factual issues" have been resolved with regard to Plaintiff. A remand is not justified merely to allow the Commissioner a further chance to obtain adequate evidence to counter Dr. de Leon's opinion or even to seek further evidence on claimant's smoking. While this is not a case where "proof of disability is overwhelming," given Dr. de Leon's opinion it can be said that proof that Plaintiff cannot do her past relevant work is strong and evidence to the contrary on that issue is lacking. Nor is there sufficient evidence to uphold a finding that Plaintiff can perform any other light exertional work, the same exertional level as her past job. Plaintiff is unable to perform her past relevant work. Evidence at most would support her doing a limited range of sedentary work. She will soon turn 60 years of age. In considering whether to remand for further proceedings or an award of benefits, this Court should consider the Commissioner's Medical Vocational Guidelines, where Rule 201.02 would direct a finding of "disabled" for claimants of age 50 and over. Claimant was within a week of being 56 on her

19

claimed disability onset date. Thus, the grid would require that transferable skills entail "little, if any, vocational adjustment" at the sedentary exertional level (§ 201.00(f)). This vocational adjustment rule would also apply to Plaintiff at the light exertional level as of September 6 of this year when she turns 60 (§ 202.00(f)). For all of these reasons, a remand for further administrative proceedings is not appropriate in this case, and the case should be reversed and remanded for an award of benefits.

III.   RECOMMENDATION

Because the ALJ's findings and conclusions are not supported by substantial evidence, IT IS RECOMMENDED that Defendant's motion be DENIED and Plaintiff's motion be GRANTED and the case remanded for an award of benefits.

The parties to this action may object to and seek review of this report and recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C.. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this report and recommendation. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge. Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty

20

(20) pages in length unless by motion and order such limit is extended by the court. The

response shall address specifically, and in the same order raised, each issue contained within the

objections.


Dated: June 30, 2005
Ann Arbor, Michigan

STEVEN D. PEPE
UNITED STATES MAGISTRATE JUDGE


Pursuant to Rule 77(d), FRCivP
COPIES HAVE BEEN MAILED TO THE
FOLLOWING:

William M. White

James A. Brunson

on 6/30/05

DEPUTY CLERK

21